GARY A. DAVIS
LICENSED IN NC, TN, CA (INACTIVE)
GADAVIS@ENVIROATTORNEY.COM

RACHEL S. DOUGHTY
LICENSED IN NC
RDOUGHTY@ENVIROATTORNEY.COM

MAILING ADDRESS:
P.O. BOX 649
HOT SPRINGS, NC 28743

TELEPHONE: 828-622-0044
FACSIMILE: 828-622-7610

September 15, 2006

## Via Certified Mail – Return Receipt Requested

James C. Tomiczek, Registered Agent
Harmony Property Group, LLC
308 Cates Street
Maryville, TN 37801

James H. Fyke, Commissioner
Tennessee Department of Environment and
Conservation
L & C Annex, 1st Floor
401 Church Street
Nashville, TN 37243

Paul E. Davis, Director
Division of Water Pollution Control
Tennessee Department of Environment and
Conservation
Division of Water Pollution Control
L & C Annex, 6th Floor
401 Church Street
Nashville, TN, 37243-1534

Lieutenant Colonel Steven J. Roemhildt
District Engineer
U.S. Army Corps of Engineers
Nashville District
P.O. Box 1070
Nashville, TN 37202-1070

Lieutenant General Carl A. Strock
Commander and Chief of Engineers
U.S. Army Corps of Engineers
Headquarters
441 G. Street, NW
Washington, DC 20314

Mr. Stephen L. Johnson, Administrator
Environmental Protection Agency
Ariel Rios Building
1200 Pennsylvania Avenue, N.W.
Mail Code: 1101A
Washington, DC 20460

James I. Palmer, Jr., Regional Administrator
U.S. Environmental Protection Agency
Region 4
Atlanta Federal Center
61 Forsyth Street, SW
Atlanta, GA 30303-3104

Re:     Notice of Intent to File Citizen Suit Pursuant to the Federal Clean Water Act

Gentlemen:

The purpose of this letter is to notify the Harmony Property Group, LLC ("Harmony")
which is located in Maryville, Tennessee, that Save Chilhowee Mountain, Inc., a non-
profit corporation, intends to file suit in sixty (60) days under 33 U.S.C. § 1365 (a)(1) of
the Clean Water Act ("CWA"), in Federal District Court against Harmony for violations
of the Federal Clean Water Act during construction of The Overlook at Montvale

("Overlook"). This letter also provides notice of intent to sue to the United States Environmental Protection Agency and the Tennessee Department of Environment and Conservation, as required by 40 C.F.R. § 135.2.

This Notice is sent on behalf of Save Chilhowee Mountain, Inc., organized under the laws of the State of Tennessee for the purposed of protecting and enhancing the environment and quality of life of the citizens and lands close to the Great Smoky Mountains National park and the Cherokee National Forest. The principal mailing address for SCM is as follows:

> Save Chilhowee Mountain, Inc.
> P.O. Box 6559
> Maryville, TN 37802
> (865) 856 7648

Overlook is located on the steep slopes of Chilhowee Mountain, next to the Foothills Parkway and in the Abrams Creek/Great Smoky Mountains National Park watershed in Blount County, Tennessee. The property contains and drains to waters of exceptional quality which provide habitat for protected species.

Two tributaries of Abrams Creek flow through the Overlook property: Bell Branch (HUC 06010204) and Mill Creek (HUC 06010204). Both are Tier II streams. See The Known High Quality (Tier II) Streams in Tennessee (Feb. 2006) (available at http://www.state.tn.us/environment/wpc/publications/hqwlist.mht). Mill Creek was listed because it is known to be home to the spotfin chub, and Bell Branch because it is a naturally reproducing trout stream. Mill Creek is listed as Tier II . "[f]rom Abrams Creek to origin." Bell Branch is listed as Tier II from "[f]rom Abrams Creek to headwaters."

Both Mill Creek and Bell Branch flow into Abrams Creek in the Great Smoky Mountains National Park within approximately 1 mile of the property. Abrams Creek is a Tier III stream (and an Outstanding National Resource Water, see Tenn. Comp. R. & Regs. R. 1200-4-3-.06(1)(4)(b)) within the Park boundaries. It is home to 4 federally listed species of fish: smoky madtom (*Noturus baileyi*), the duskytail darter (*Etheostoma percnurum*), yellowfin madtom (*N. flavipinnis*) and spotfin chub (*Cyprinella monacha*). An endangered plant, the Virginia spiraea (*Spiraea virginiana*), was also identified by the U.S. Fish and Wildlife Service as potentially within the impact area of the project. See July 10, 2006 Letter from Lee Barclay, U.S. Fish and Wildlife Service, to Leigh Yates, Jr., Tennessee Department of Environment and Conservation.

The proposed development would be 80 homes with some commercial components on approximately 283 acres. According to the Storm Water Pollution Prevention Plan ("SWPPP") for the project approximately 34 acres would be graded for roads, and an additional 46 acres would be graded for home sites. Overlook has proposed placing 3 portions of the headwaters of Bell Branch in culverts for road crossings. It has also proposed placing Mill Creek in a culvert for a road crossing to "allow for access to the

western half of the property" and "increase the amount of prime development area on the property." For Crossing #1, the culvert would be 87 feet long on an unnamed tributary to Bell Branch; Crossing #2 would be 97 feet long on an unnamed tributary to Bell Branch; Crossing #3 would be 94 feet long on an unnamed tributary to Bell Branch; and Crossing #4 would be 56 feet long on Mill Creek.

On June 29, 2006 the Tennessee Department of Environment and Conservation, Knoxville Environmental Field Office, Division of Water Pollution Control ("TDEC") issued a Notice of Coverage under NPDES Construction General Permit ("General Permit"), Tracking No. TNR131972 to the Harmony Property Group for the project "The Overlook at Montvale" for discharges into "Mill Creek and Bell Branch which are both tributaries of Abrams Creek."

On June 29, 2006 TDEC issued Letter of Coverage under the General Permit for Construction and Removal of Minor Road Crossings, Aquatic Resource Alteration Permit ("ARAP"), NR0603.092 to the Harmony Property Group for the project "The Overlook at Montvale" for "[c]onstruction of a road crossing over Mill Creek using 56' of 48" HDPE pipe in the Mill Creek."

On June 29, 2006 TDEC issued Letter of Coverage under the General Permit for Construction and Removal of Minor Road Crossings, Aquatic Resource Alteration Permit, NR0603.091 to the Harmony Property Group for the project "The Overlook at Montvale" for "[c]onstruction of three road crossings in three separate un-named tributaries of Bell Branch."

The CWA prohibits the discharge of pollutants from a point source to the waters of the United States except when pursuant to and in compliance with a permit. *See* 33 U.S.C. § 1311(a); 33 U.S.C. § 1342. General permits for the discharge of storm water from a construction site of an area of one (1) acre or more are issued by the state as authorized under 33 U.S.C. § 1342. One of the requirements of this General Permit is that a Storm Water Pollution Prevention Plan ("SWPPP") be submitted, implemented, and updated. See General Permit §1.4.2. In this case, the SWPPP submitted to TDEC was inadequate, a violation of the terms of the General Permit. Further, Harmony has failed to implement the SWPPP as is required by the General Permit. See Rule 1200-4-10-.03(1)("A permit is a license to conduct an activity which is regulated under § 69-3-108 in strict compliance with the conditions and limitations contained within the permit."); General Permit § 3.1 ("The initial permittee must implement the SWPPP as written from commencement of construction activity until final stabilization is complete, or until the permittee does not have design or operational control of any portion of the construction site.").

## Inadequate Storm Water Pollution Prevention Plan

The following is a list inadequacies in the Storm Water Pollution Prevention Plan submitted by Harmony, and therefore of the General Permit. See General Permit § 3.5 ("The SWPPP shall include the following items, as described in sections 3.5.1 to 3.5.10

below:  site description, description of storm water runoff controls, erosion prevention and sediment controls, storm water management, description of the items needing control, . . . maintenance, inspections, pollution prevention measures for non-storm water discharges."); § 3.3.1 (signature requirements of SWPPP).

1. **Failure to provide required information in SWPPP:** The SWPPP is not comprehensive or site specific.  It is mostly cut and pasted from the general language of the General Permit
   a. **Begin Date**: June 29, 2005 (approval date)
   b. **End Date**: continuing
   c. **Citation for violation**:  General Permit §3.1

2. **Failure to provide required information in SWPPP/Inadequate controls in SWPPP to assure compliance with permit:**  No contractors have signed the NOI, so they may not even know of its existence, or they may not comply with it.
   a. **Begin Date**: 2 days before whenever contractor assumed "operational control over site specifications or commence[d] work at the site."  General Permit § 2.4.3.
   b. **End Date**: continuing
   c. **Citation for violation**: General Permit § § 2.1, 2.4.3, 2.6.1, 3.5.1 (l)

3. **Failure to provide required information in SWPPP:**  Failure to identify all outfalls where runoff will leave the property, in particular drainage from the SB-1.
   a. **Begin Date**: June 29, 2006
   b. **End Date**: continuing
   c. **Location**:  SB-1.  Visible on SWP 2
   d. **Citation for violation**:.  General Permit §§ 2.6.2, 3.1

4. **Failure to provide required information in SWPPP:**  Failure to state when Phase I and Phase II are projected to begin or when any major activities at the site will begin.
   a. **Begin Date**: June 29, 2006
   b. **End Date**: continuing
   c. **Citation for violation**:  General Permit §§ 3.5.1 (m),  3.5.3.1 (k)

5. **Failure to provide required information in SWPPP:**  SWPPP page 4, last paragraph states that building contractors for each lot will provide erosion control measures for each building site.  The plan does not state whether these contractors will be required to sign onto the existing SWPPP and/or obtain individual coverage for the activities on their lots.
   a. **Begin Date**: June 29, 2006
   b. **End Date**: continuing
   c. **Location**:  See rudimentary plan for lots on SWP 7
   d. **Citation for violation**: General Permit §§ 2.2.2, 2.3.2(d)

6. **Failure to provide required information in SWPPP:**  Otto Slater, the representative of Harmony Property Group did not provide his title (authority to act on behalf of Company).
   a. **Begin Date**: June 29, 2006
   b. **End Date**: continuing
   c. **Location**:  SWPPP, p. 1
   d. **Citation for violation**:  General Permit §§ 6.7, 6.7.1(a), 6.7.2

7. **Failure to provide required information in SWPPP:**  Beyond planting of grass, stabilization at the site is not defined.
   a. **Begin Date**: June 29, 2006
   b. **End Date**: continuing

c. **Citation for violation**: General Permit § 3.5.3.2

8. **Failure to provide required information in SWPPP:** Bulldozed road which is not included in the SWPPP.
   a. **Begin Date**: June 29, 2006
   b. **End Date**: continuing
   c. **Location**: parallel to main road approximately 1400 feet along main road (entered from Happy Valley Road)
   d. **Citation for violation**: General Permit § 3.5.1

9. **Failure to provide required information in SWPPP:** Plan does not include information about ARAP and 404 permits
   a. **Begin Date**: June 29, 2006
   b. **End Date**: continuing
   c. **Citation for violation**: General Permit § 3.5.1 (i)

10. **Inadequate controls in SWPPP to assure compliance with permit:** The SWPPP states that some non-storm discharges from the site are to be expected. It also says that stormwater and non-stormwater will be combined in a temporary sediment trap. If stormwater and non-stormwater will be combined, a method to ensure appropriate pollution prevention must be addressed.
    a. **Begin Date**: June 29, 2006
    b. **End Date**: continuing
    c. **Location**: SWPPP, section 4.2
    d. **Citation for violation**: General Permit § 2.1

11. **Inadequate controls in SWPPP to assure compliance with permit:** No provision in the SWPPP for outfall inspection as is necessary to ensure that BMPs are functioning as intended.
    a. **Begin Date**: June 29, 2006
    b. **End Date**: continuing
    c. **Location**: See SWPPP, p. 7
    d. **Citation for violation**: General Permit § 2.1

12. **Inadequate controls in SWPPP to assure compliance with permit:** SWPPP, p. 2, numeral 1 states "Where necessary, minor structural features will be installed to remove sediment from runoff prior to the runoff physically leaving the disturbed area." Given the steepness of the site, more than "minor structural features" are needed and must be described in more detail.
    a. **Begin Date**: June 29, 2006
    b. **End Date**: continuing
    c. **Citation for violation**:
       i. General Permit §§ 3.1 (c), 3.5.3.3., 4.4.1(a)
       ii. Notice of Coverage for The Overlook at Montvale (June 29, 2006)

13. **Inadequate controls in SWPPP to assure compliance with permit:** There is no discussion of when rock check dams will be used.
    a. **Begin Date**: June 29, 2006
    b. **End Date**: continuing
    c. **Location**: See SWPPP, p. 9
    d. **Citation for violation**:
       i. General Permit §§ 3.1, 3.5.3.3, 4.4, 4.4.1(a)
       ii. See Notice of Coverage for The Overlook at Montvale (June 29, 2006)

14. **Inadequate controls in SWPPP to assure compliance with permit:** Silt fences should be installed at close intervals, as described by the TN Sediment and Erosion

Manual. The SWPPP states only at the toe of slopes and around storage piles will silt fences be used, but this is inadequate according to the Tennessee Sediment and Erosion Control Manual and good engineering practices. Silt fences must be installed based on the length of slope and drainage area. This is not discussed.

- a. **Begin Date**: June 29, 2006
- b. **End Date**: continuing
- c. **Location**: SWPPP, p. 9
- d. **Citation for violation**:
    - i. General Permit §§ 3.1, 3.1 (c), 3.5.3.3, 4.4.1(a)
    - ii. Notice of Coverage for The Overlook at Montvale (June 29, 2006)

15. **Inadequate controls in SWPPP to assure compliance with permit:** There is no discussion in the SWPPP of who will be responsible for implementing each control measure.
    - a. **Begin Date**: June 29, 2006
    - b. **End Date**: continuing
    - c. **Location**: SWPPP, p. 9
    - d. **Citation for violation**: General Permit §§ 3.1, 3.5.2, 4.4.1(a)

16. **Inadequate controls in SWPPP to assure compliance with permit:** The site has steep slopes (up to 100%), but the SWPPP does not address additional measures to stabilize these slopes and soils as is required.
    - a. **Begin Date**: June 29, 2006
    - b. **End Date**: continuing
    - c. **Location**: SWPPP, p. 9
    - d. **Citation for violation**: General Permit §§ 3.1, 3.5.2, 3.5.3.1(b), 4.4.1(a)

17. **Inadequate controls in SWPPP to assure compliance with permit:** Because the "site may contain significant amounts of silt, [and] the division considers the potential for degradation to the receiving stream from the discharge to be significant," and because the receiving stream has federal or threatened endangered species in the area downstream of the project, additional monitoring to ensure compliance with the permit. See NPDES Construction General Permit Tracking No. TNR 131972 (The Overlook.
    - a. **Begin Date**: June 29, 2006
    - b. **End Date**: continuing
    - c. **Citation for violation**: General Permit § 3.1 (c), 4.4.1(a), 4.4.1(f)

18. **Inadequate controls in SWPPP to assure compliance with permit:** The purpose section of the plan described water quality standards inadequate to protect receiving waters. The SWPPP prohibits "distinctly visible floating scum, oil or other matter contained in the stormwater discharge," that the "storm water discharge must not cause an objectionable color contrast in the receiving stream," and that storm water discharges not result in "materials in concentrations sufficient to be hazardous or otherwise detrimental." See Harmony SWPPP (accepted May 10, 2006). This is far below the Tennessee's standards for exceptional waters.
    - a. **Begin Date**: June 29, 2006
    - b. **End Date**: continuing
    - c. **Citation for violation**:
        - i. General Permit §§ 3.1 (c), 4.4.1(f)
        - ii. Tenn. Comp. R. & Regs. R.1200-4-3-.06 (4)

## *The Developer has Violated the General Permit upon Implementation of the SWPPP*

Harmony has failed to implement the SWPPP as is required by the General Permit. See Rule 1200-4-10-.03(1)("A permit is a license to conduct an activity which is regulated under § 69-3-108 in strict compliance with the conditions and limitations contained within the permit."); General Permit § 3.1 ("The initial permittee must implement the SWPPP as written from commencement of construction activity until final stabilization is complete, or until the permittee does not have design or operational control of any portion of the construction site."). The following continues the list of violations of the General Permit, these upon implementation of the SWPPP.

19. **Filling Spring (# 1) and ephemeral stream without ARAP and in violation of NPDES:** SB-1 is located on, and caused fill of an ephemeral stream or wet weather conveyance. The developer knew of the presence of the spring that at one time fed the ephemeral stream.
    a. **Begin Date**: first observed 8/18/06
    b. **End Date**: continuing
    c. **Location**: This spring may be observed from Happy Valley Road. It is approximately 400 feet from the construction entrance, in and on the north side of the bull dozed road. The ephemeral stream is filled in and under the planned location of Sediment Basin SB-1. SB-1 is centered on the shallow subsurface flow channel which was intermittently exposed along its pathway at depths of around 3 feet below ground level. The outflow from this natural conveyance appears to be located on the other side of the planned dam for the sediment basin (SB-1). The present outflow is observed to continue on down the steep slope and enter a tributary to Bell Branch. SWP 2 shows location of SB-1. Path was originally marked with blue flags by the developer.
    d. **Citation for violation:**
        i. General Permit §§ 3.5.1(j), 3.5.3.3, 3.5.5(a), 4.4.2
        ii. Tenn. Comp. R. & Regs. R. 1200-4-3-.06(4)
20. **Filling Spring (# 2) without ARAP and in violation of NPDES:** Spring with flowing water (not wet weather conveyance) cut by main road and filled with timber and dirt. Water standing in road. No culvert in plan.
    a. **Begin Date**: first observed 8/ 25 13/06
    b. **End Date**: continuing
    c. **Location**: 1400 feet from construction entrance, within and on the north side of main road.
    d. **Citation for violation:**
        i. General Permit §§ 3.5.1(j), 3.5.5 (a), 4.4.2
        ii. Tenn. Comp. R. & Regs. R. 1200-4-3-.06(4)
21. **Filling Spring (#3) without ARAP and in violation of NPDES:** A third spring is cut by the road.
    a. **Begin Date**: first observed 8/25/06
    b. **End Date**: continuing
    c. **Location**: This spring is located about 150 feet past Spring # 2. Spring is flowing with water and running along road toward Spring # 2. No culvert in plan
    d. **Citation for violation:**
        i. General Permit §§ 3.5.1(j), 3.5.3.3, 3.5.5(a), 4.4.2
        ii. Tenn. Comp. R. & Regs. R. 1200-4-3-.06(4)
22. **failure to properly implement SWPPP:** Roads include slopes greater than those shown on plans (20% is maximum on plans) and Erosion control structures are therefore not designed for such great slopes.
    a. **Begin Date**: first observed 8/25/06

      b. **End Date**: continuing
      c. **Location**: approximately 400 feet from Tributary 1 where road crosses to top of ridge. Shown on map SWP 3. Other areas where road is similarly steep.
      d. **Citation for violation**: General Permit §§ 3.5.1, 3.5.8.2, 6.14

23. **improper construction of CE**: no TDOT #1 stone for the stabilized entrance
      a. **Begin Date**: date of first activity on site 8/8/06
      b. **End Date**: 8/17/06
      c. **Location**: main entrance from Happy Valley Road, specifications on SWP 6
      d. **Citation for violation**: General Permit § 6.14

24. **improper construction of CE**: no stone at entrance
      a. **Begin Date**: 8/8/06
      b. **End Date**: 8/17/06
      c. **Location**: main entrance from Happy Valley Road, specifications on SWP 6
      d. **Citation for violation**: General Permit § 6.14

25. **improper construction of CE**: geotextile fabric not spread below rock, incomplete coverage. Coverage is only approximately 35 feet
      a. **Begin Date**: placed 8/17/06
      b. **End Date**: continuing
      c. **Location**: main entrance to construction site (off Happy Valley Road specifications on SWP 6
      d. **Citation for violation**: General Permit § 6.14

26. **improper construction of CE**: insufficient length of graveled area
      a. **Begin Date**: gravel placed 8/17/06
      b. **End Date**: continuing
      c. **Location**: main entrance from Happy Valley Road; specifications on SWP 6
      d. **Citation for violation**: General Permit § 6.14

27. **improper construction of CE**: insufficient gravel (less than 6")
      a. **Begin Date**: gravel placed 8/17/06
      b. **End Date**: continuing
      c. **Location**: main entrance from Happy Valley Road, specifications SWP 6
      d. **Citation for violation**: General Permit § 6.14

28. **improper construction of CE**: No wattles on slope from Construction entrance (South)
      a. **Begin Date**: 8/ 17/06
      b. **End Date**: 9/5/06
      c. **Location**: shown on SWP 2; south slope of construction entrance
      d. **Citation for violation**: General Permit § 3.5.3.1(l)

29. **Tracking of sediment onto Happy Valley Rd.**
      a. **Begin Date**: 8/7/06
      b. **End Date**: 9/8/06
      c. **Location**: Happy Valley Road, specifications on SWP 6
      d. **Citation for violation**:
         i. General Permit §§ 3.5.5 (b), 6.14

30. **Violation of water quality standards**: demonstrated by analytical samples. Samples show greater sediment 300 feet from property line (8/31/06: 32 mg/L; 8/18/06: 17.6 mg/L; 8/13/06, 12 mg/l) than at 800 feet from property line (8/31/06: 26 mg/L; 8/18/06: 4 mg/L; 8/13/06, 6.4 mg/l). Samples suggest a continuing pattern of water quality degradation.
      a. **Begin Date**: 8/31/06, 8/18/06, 8/13/06
      b. **End Date**: continuing
      c. **Location**: Tributary #1. Viewed approximately 300 and 800 feet from where tributary crosses the southern property boundary.
      d. **Citation for violation**:
         i. General Permit § 4.3.1, 4.4.1
         ii. Tenn. Comp. R. & Regs. R. 1200-4-3-.03(3)
         iii. Tenn. Comp. R. & Regs. R. 1200-4-3-.06(4)

31. **Violation of Water Quality Standards**: Visible silt in stream (in violation of ARAP permit)

    a. **Begin Date**: 8/31/06 (approximately 4 hours after storm)
    b. **End Date**: continuing
    c. **Location**: Tributary #1. Viewed approximately 300 and 800 feet from where tributary crosses the southern property boundary.
    d. **Citation for violation:** Tenn. Comp. R. & Regs. R. 1200-4-3-.03(3)

32. **Failure to implement BMPs:** Failure to maintain buffers
    a. **Begin Date**: first observed 8/29/06
    b. **End Date**: continuing
    c. **Location**: along southern boundary of Tract 5, 2.83 ac on SWP2
    d. **Citation for violation**: General Permit § 4.4.2

33. **Failure to implement BMPs:** no straw bales on down slope side of Type A and Type C silt fences
    a. **Begin Date**: 8/19/06
    b. **End Date**: continuing
    c. **Location**: down slope east side of construction entrance, Southeast side of SB-1 and common area on SWP 2
    d. **Citation for violation:**
      i. SWP 6
      ii. General Permit § 6.14

34. **Failure to implement BMPs:** HDPE pipe across named Tributary #1 in ARAP is too small. SWPPP calls for 30 inch, but only 12 inch pipe was installed.
    a. **Begin Date**: first observed 8/25/06
    b. **End Date**: continuing
    c. **Location**: Where road crosses Tributary # 1, shown on SWP 3 approximately 550 ft. from matchline for SWP 2
    d. **Citation for violation**: General Permit § 6.14

35. **Failure to implement BMPs:** HDPE pipe across the next unnamed tributary is not installed. SWPPP calls for 24 inch.
    a. **Begin Date**: first observed 8/25/06
    b. **End Date**: continuing
    c. **Location**: Approximately 1300 feet from Tributary 1 road crossing. See SWP 3
    d. **Citation for violation**: General Permit § 6.14

36. **Failure to implement BMPs:** HDPE pipe across the next unnamed tributary is too small (12" vs. 18"). Water in road as a result.
    a. **Begin Date**: first observed 8/25/06
    b. **End Date**: continuing
    c. **Location**: Approximately 1150 feet from Tributary 1 road crossing and approximately 200 feet down road from intersection with partially dozed cul-de-sac. See SWP 3
    d. **Citation for violation**: General Permit § 6.14

37. **Failure to implement BMPs:** Failure to install 18" HDPE as required by SWPP
    a. **Begin Date**: first observed 8/25/06
    b. **End Date**: continuing
    c. **Location**: See SWP 3. Site is approximately 300 feet along road from matchline to SWP 2.
    d. **Citation for violation**: General Permit §§ 3.5.5 (a), 6.14

38. **Failure to implement BMPs:** Failure to install 24 inch HDPE as required by SWPP. Road washouts resulting from failure to install culvert
    a. **Begin Date**: first observed 8/25/06
    b. **End Date**: continuing
    c. **Location**: Approximately 600 feet from Tributary 1 road crossing and downhill from the ridge
    d. **Citation for violation**: General Permit § 3.5.5 (a), 6.14

39. **Failure to implement BMPs:** Existing HDPE is nearly completely obscured with debris, causing water and sediment to wash over road.
    a. **Begin Date**: first observed 8/25/06

      **b. End Date:** continuing

      **c. Location:** Where road crosses Tributary # 1, shown on SWP 3 approximately 550 ft. from matchline for SWP 2.

      **d. Citation for violation:** General Permit § 6.14

## I. Conclusion

Thank you for your prompt attention to the on-going serious water quality degradation at the Overlook at Montvale. Unless one of the responsible agencies commences and diligently prosecutes an action in court to address these violations within sixty (60) days, we intent to file a citizen suit against Harmony under section 505(a) of the Clean Water Act for the violations listed. In addition to these violations, this notice covers all violations of the Clean Water Act evidenced by information which becomes available to Citizen Complainants after the date of this Notice of Intent to Sue. Pursuant to the Clean Water Act, we will seek civil penalties, attorney's fees and costs, as well as an injunction against continued illegal discharges.

All communication with Save Chilhowee Mountain, Inc. relating to this matter should be directed to counsel for Save Chilhowee Mountain, Inc, Rachel Doughty and Gary A. Davis, at the address and telephone number listed at the top of this letter.

                Respectfully,

                *Rachel S. Daughty*

                Rachel S. Doughty

cc:    Lee A. Barclay, Ph.D.
        Field Supervisor
        U.S. Department of Interior
        Fish and Wildlife Service
        446 Neal Street
        Cookeville, TN 38501

        Alberto Gonzalez, U.S. Attorney General
        U.S. Department of Justice
        950 Pennsylvania Ave., NW
        Washington, DC 20530-0001